## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DAVID MAILHOT,
individually and on behalf of all
others similarly situated,                                              CLASS ACTION

       Plaintiff,                                              JURY TRIAL DEMANDED

v.

SELLSTATE RESULTS REALTY, INC.
d/b/a SELLSTATE PARTNERS REALTY,

       Defendant.
_____/

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff David Mailhot brings this class action against Defendant Sellstate Results Realty, Inc. d/b/a Sellstate Partners Realty, and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's violations of the TCPA.

2.      Defendant is a real estate brokerage based in Coral Springs, Florida.

3.      To solicit new clients, Defendant engages in unsolicited marketing with no regard for privacy rights of the recipients of those messages.

4.      Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

5.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant.  Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

7.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant have sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

8.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Indian River County, Florida.

9.     Defendant is a Florida corporation with a principal address of 1750 University Drive, Suite 126, Coral Springs, FL 33071.  Defendant directs, markets, and provides substantial business

activities throughout the State of Florida.

## THE TCPA

10.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.     The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

15.     A defendant must demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

16.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

<u>**FACTS**</u>

17.     Beginning on or about May 12, 2019, Defendant commenced a campaign of hounding Plaintiff with the following persistent and frequent text messages to Plaintiff's cellular telephone number ending in 3380 ("3380 Number"):

| (954) 280-6252 › |
| :---: |

Text Message
Sun, **May 12**, 8:06 PM

> DAVID, are you still considering buying or selling your home?  -  dbabcock@aol.com from Sellstate Partners Realty

Mon, **May 13**, 4:13 PM

> DAVID, it's  here at Sellstate Partners Realty. You requested a home value recently...are you considering selling your home?  -  from Sellstate Partners Realty

(954) 280-6252 ›

Mon, May 13, 4:13 PM

DAVID, it's here at Sellstate Partners Realty. You requested a home value recently...are you considering selling your home? - from Sellstate Partners Realty

Tue, May 21, 11:16 AM

Hi DAVID, I sent over an e-mail yesterday and wanted to make sure you saw it. Go ahead and respond to it when you can. Thanks! - dbabcock@aol.com from Sellstate Partners Realty

(954) 280-6252 ›

Tue, May 28, 10:09 AM

Hi DAVID, it's dbabcock@aol.com. I'm going to be in the area, maybe I can stop by and drop off a complete home value report. When's a good time?  - dbabcock@aol.com from Sellstate Partners Realty

Thu, May 30, 10:47 AM

DAVID, I was reviewing my e-mails and don't see that we've connected recently. Are you still in the market to buy a home?  - Doug Babcock from Sellstate Partners Realty

(954) 280-6252 ›

Partners Realty

Sun, Jun 2, 8:33 AM

Hi DAVID
I was just checking my
contacts and wanted to
check in and catch up.
dbabcock@aol.com from
Sellstate Partners Realty

Tue, Jun 4, 10:46 AM

Hi DAVID, I was just
wondering if you had an
idea on when you would like
to list your property for
sale?  - dbabcock@aol.com
from Sellstate Partners
Realty

(954) 280-6252 ›

**Thu, Jun 13,** 11:35 AM

DAVID, there are still plenty of great buys on the market, if you are still looking for a home I can save you thousands! BTW, are you still looking? 🤔  - Doug Babcock from Sellstate Partners Realty

**Sat, Jun 15,** 11:24 AM

Just a REMINDER - if you are ever considering buying or selling a home or know of anyone who is - I'm here to assist in anyway!  - dbabcock@aol.com from Sellstate Partners Realty

(954) 280-6252 ›

changes in the industry that could impact your plan to sell ... maybe good though! Call me.  - dbabcock@aol.com from Sellstate Partners Realty

Thu, Jun 27, 8:47 PM

Did you see my text? It's me dbabcock@aol.com from Sellstate Partners Realty

Fri, Jun 28, 5:36 PM

Hi DAVID
I was just checking my contacts and wanted to check in and catch up. dbabcock@aol.com from Sellstate Partners Realty

(954) 280-6252 ›

Tue, Jul 16, 11:27 AM

Hey DAVID, have you seen any homes that you like? Let me know which ones and I can arrange a showing...maybe even today or tomorrow 😃...let me know!

Fri, Jul 19, 8:24 AM

DAVID, have you seen what sold in your neighborhood lately? and for how much!? When did you plan on listing your home for sale? We should talk.  - dbabcock@aol.com from Sellstate Partners Realty

(954) 280-6252 ›

Sun, Jul 21, 11:45 AM

When you have a few minutes, I would love to chat. Unless you don't want to? 😢 - dbabcock@aol.com from Sellstate Partners Realty

Tue, Jul 23, 11:21 AM

Hello [[first name]]! Did you know you can buy a home with NO MONEY down? 😲 I sent you an email with details, or if you'd like to know how, give me a call.  - Doug Babcock from Sellstate Partners Realty

Sun, Aug 4, 3:50 PM

11

(954) 280-6252 >

Hi DAVID, some homes recently sold in the area and I thought you might want to know what they sold for. I think you'll find it very interesting!! 🤔  - dbabcock@aol.com from Sellstate Partners Realty

Mon, Aug 5, 5:42 PM

Did you see my text? It's me dbabcock@aol.com from Sellstate Partners Realty

Today 3:16 PM

DAVID, how long have you been searching for a home? - Doug Babcock from Sellstate Partners Realty

(954) 280-6252 ›

Did you see my text? It's me
dbabcock@aol.com from
Sellstate Partners Realty

**Tue, Aug 13,** 3:16 PM

DAVID, how long have you
been searching for a home?
- Doug Babcock from
Sellstate Partners Realty

**Monday** 9:00 AM

Hi DAVID! In case you're
available, I'm going to be in
the area showing homes in
the next couple weeks. Are
there any homes you'd like
to see??  - Doug Babcock
from Sellstate Partners
Realty

- Doug Babcock from
Sellstate Partners Realty

**Monday** 9:00 AM

Hi DAVID! In case you're available, I'm going to be in the area showing homes in the next couple weeks. Are there any homes you'd like to see?? - Doug Babcock from Sellstate Partners Realty

**Today** 9:00 AM

Just a REMINDER - if you are still looking for a home - I'm here to assist in anyway! - Doug Babcock from Sellstate Partners Realty

Saturday 9:00 AM

Just a REMINDER - if you
are still looking for a home -
I'm here to assist in anyway!
- Doug Babcock from
Sellstate Partners Realty

Yesterday 11:47 AM

Hi DAVID, it's
dbabcock@aol.com. I'm
going to be in the area,
maybe I can stop by and
drop off a complete home
value report. When's a good
time?  - dbabcock@aol.com
from Sellstate Partners
Realty

18.     Thus, Defendant's tortious conduct against Plaintiff occurred in part within this district

and, on information and belief, Defendant sent the same text message complained of by Plaintiff to

other individuals within this judicial district, such that some of Defendant's acts have occurred within

this district, subjecting Defendant to jurisdiction here.  In addition, jurisdiction in this district is proper

because Defendant's principal place of business is in this district.

19.     At no point in time did Plaintiff provide Defendant with his express written consent to

be contacted by text message using an ATDS.

20.     Plaintiff is the sole user and/or subscriber of the 3380 Number.

21.     Additionally, Plaintiff has been on the National Do Not Call Registry since October 9, 2005.

22.     The number used by or on behalf of Defendant (954-280-6252) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

23.     Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

24.     Further, the impersonal and generic nature of Defendant text messages demonstrates that Defendant utilized an ATDS in transmitting the messages.

25.     To send the text message, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

26.     The Platform has the capacity to store telephone numbers.

27.     The Platform has the capacity to generate sequential numbers.

28.     The Platform has the capacity to dial numbers in sequential order.

29.     The Platform has the capacity to dial numbers from a list of numbers.

30.     The Platform has the capacity to dial numbers without human intervention,.

31.     The Platform has the capacity to schedule the time and date for future transmission of

text messages.

32.     To transmit the messages at issue, the Platform automatically executed the following steps:

> (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;
>
> (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;
>
> (3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.
>
> (4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

33.     The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

34.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



35.    Defendant's unsolicited text messages caused Plaintiff actual harm.  Specifically, Plaintiff estimates that he has wasted approximately one hundred to one hundred thirty seconds reviewing all of Defendant's unwanted messages.  Each time, Plaintiff had to stop what he was doing to look down at his phone to review the messages.

36.    Further, Defendant hounded Plaintiff with persistent messages, including early in the morning and late at night, on weekends and during the week.  Plaintiff was at home when he received many of these messages, which resulted in an audible sound and the disturbance of the domestic peace of Plaintiff's home.  Several of Defendant's text messages woke Plaintiff up in the morning, and during his naps in the afternoon.

37.    Plaintiff also spent time consulting with counsel for the purposes of filing this suit.

38.    Additionally, Plaintiff wasted time responding "STOP" so that he would no longer receive messages from Defendant.

39.    After he replied "STOP," Plaintiff received another message confirming that he would no longer be contacted.  He spent additional time reviewing this reply.

40.    In all, Defendant's violations of the TCPA caused Plaintiff to waste his time in addressing and attempting to stop Defendant's solicitations.  This time was spent while Plaintiff was at his home and could have been pursuing other personal activities.

41.    Furthermore, Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes.  The cumulative effect of unsolicited

text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

### PROPOSED CLASS

42.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

43.     Plaintiff brings this case on behalf of the below defined Class:

> **No Consent Class**:  **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.**

> **Do Not Call Registry Class**: **All persons in the United States who from four years prior to the filing of this action (1) were text messaged by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and/or services.**

44.     Defendant and their employees or agents are excluded from the Class.

45.     Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

46.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

47.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

48.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendant conduct was knowing and willful;
>
> (4) Whether Defendant are liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

49.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

50.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

51.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

54.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

55.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

56.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

57.     Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

58.     These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

59.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

60.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

61.     Plaintiff repeats and realleges the paragraphs 1 through 53 of this Complaint and incorporates them by reference herein.

62.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

64.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

65.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

66.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

68.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff David Mailhot, on behalf of himself and the other members of the Class, prays for the following relief:

a.     A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.     An injunction prohibiting Defendant from using an automatic telephone dialing system to call telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.     An award of actual, statutory damages, and/or trebled statutory damages; and

e.     Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the calls as alleged herein.

Date:  August 30, 2019

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

*Counsel for Plaintiff and the Class*